UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

SCOTT ARLIS THOMAS,

Defendant-Movant,

v.

UNITED STATES OF AMERICA,

Plaintiff-Respondent.

Case Nos.  1:23-cv-00404-BLW
1:20-cr-00220-BLW

**MEMORANDUM DECISION
AND ORDER**

Scott Arlis Thomas (Defendant) filed a Motion to Vacate Sentence under

28 U.S.C. § 2255. The Court earlier considered the briefing, entered a notice of

intent to rule on the § 2255 motion, and requested supplementation. Civ. Dkt. 21.

Defendant's "Chirp" messages (jail-monitored text messages) and medical records

from his jail stay were subpoenaed and received. Civ. Dkt. 24, 32. The Court has

reviewed the parties' supplements (Dkts. 30, 33, 36, 37) and concludes that the §

2255 Petition is subject to denial.

## 1. Claims Previously Determined to be Subject to Denial

The Court earlier gave the parties notice that the following claims were

subject to dismissal based on the § 2255 motion, supporting documents, and the

record in the criminal and civil action:

**MEMORANDUM DECISION AND ORDER - 1**

- Claim1(A)  Unidentified factual mistakes were made at the bench trial, causing his plea not to be knowing or voluntary.

- Claim 1(C)   There was an agreement that he could appeal the suppression motion denial.

- Claim 1(D)   He was threatened with the possibility of increased sentences, including consequences of the Payette County case.

- Claim 1(E).   The Court noticed that Defendant was answering questions inappropriately, causing the Court to notice something was off or it had a bad feeling about Defendant's answers.

- Claims 2(A)  Ineffective Assistance of Counsel (IAC): Conflict of Interest in Federal Defender Services of Idaho (FDSI) office.

- Claim 2(B)  IAC: Failure to Investigate Change in Jeffrey Jack Ellis testimony about whether Defendant rented garage 5.

- Claim 2(C)  IAC: Failure to Correct Factual Mistakes in Presentence Report.

- Claim 2(D)  IAC: Failure to Request a § 5K2.12 "Duress" Departure.

- Claim 3(A)(i)   Law Enforcement Misconduct: Payette County Officers.

- Claim 3(A)(ii)   Law Enforcement Misconduct: Search-related Misconduct.

- Claim 3(A)(iii)   Law Enforcement Misconduct: Task Force.

- Claim 3(A)(iv)   Law Enforcement Misconduct: Silencer Testing.

- Claim 3(B)(i)   Prosecutorial Misconduct: Vindictive Superseding Indictment.

- Claim 3(B)(ii)   Prosecutorial Misconduct: Eliciting False Testimony.

- Claim 3(B)(iii)   Prosecutorial Misconduct: Failure to Disclose Officer Misconduct.

- Claim 3(B)(iv)   Prosecutorial Misconduct: Late Disclosure of Test Results and Presenting False Testimony.

- Claim 3(B)(v)   Prosecutorial Misconduct: Vindictive Prosecution re:

**MEMORANDUM DECISION AND ORDER - 2**

Length of Sentence.

- Claim 4(A):  Actual Innocence: Silencer Conviction.

- Claim 4(B):  Actual Innocence: Ammunition Conviction.

- Claim 5:  Equitable Estoppel: Silencer Conviction.

In the supplemental briefing, Defendant provides additional argument on his actual innocence claim. Dkt. 33 at 8-15. He argues that "the interpretation of the firearm statute is so overbroad and vague that it is unconstitutional." Actual innocence, however, is factual innocence, not legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998)). Nothing in his supplement convinces the Court that this is a ground for § 2255 relief.

To the extent Defendant has provided additional argument in support of any of these claims, the Court rejects those arguments. For the reasons set forth in the Notice of Intent to Rule, the Court denies and dismisses these claims because the record conclusively shows that Defendant is not entitled to relief.

## 2. Two Remaining Claims

The parties were ordered to submit additional supporting or rebuttal evidence or affidavits to address two ineffective assistance of counsel claims, which they have done. The Court has reviewed the supplements.

### A. Standard of Law

A defendant is entitled to effective assistance of counsel at all "critical stages" of the criminal process, including pretrial, arraignments, post-indictment interrogations, post-indictment lineups, and the entry of a guilty plea. *Missouri v. Frye*, 566 U.S. 134,

MEMORANDUM DECISION AND ORDER - 3

145 (2012). "Effective assistance" is defined by *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* dictates that, to succeed on an ineffective assistance claim, a petitioner must show that (1) counsel's performance was deficient in that it fell below an objective standard of reasonableness, and that (2) the petitioner was prejudiced by the deficient performance. *Id*. at 684.

In assessing trial counsel's performance under *Strickland*'s first prong, a reviewing court must view counsel's conduct at the time that the challenged act or omission occurred, making an effort to eliminate the distorting lens of hindsight. *Id*. at 689. The court must indulge in the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Id*. A petitioner asserting ineffective assistance of counsel must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

In assessing prejudice under *Strickland*'s second prong, a court must find that, under the particular circumstances of the case, there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id*. at 684, 694. A reasonable probability is one sufficient to undermine confidence in the outcome. *Id*. at 694.

A petitioner must establish both deficient performance and prejudice to prove an ineffective assistance of counsel claim. 466 U.S. at 697. The court may consider either prong of the *Strickland* test first, or it may address both prongs, even if one is deficient and will compel denial. *Id.*

**MEMORANDUM DECISION AND ORDER - 4**

The *Strickland* standard is "highly demanding" and requires consideration of counsel's "overall performance throughout the case," *Kimmelman v. Morrison*, 477 U.S. 365, 382; 386 (1986), and "the totality of the evidence before the judge or jury," *Strickland,* 466 U.S. at 695.

### B.  Discussion of COVID-19 Claim

Claim 1(B) is that Defendant was suffering from the effects of COVID-19 and could not think straight during the stipulated trial, causing his agreement to the terms to be unknowing and involuntary, but trial counsel failed to take steps to continue the trial or do anything else.

Defendant was represented by attorney Mark Ackley, the first assistant for the Federal Defender Service of Idaho (FDSI). *See* Civ. Dkt. 14-1. As a matter of defense strategy, rather than negotiate a plea agreement where Defendant would admit to guilt, Mr. Ackley negotiated a stipulation (Dkt. 45) that required the Court to make a ruling that Defendant was guilty of the crimes charged based on the parties' stipulated law and facts ("the trial"). As a result of the stipulation, Defendant's right to appeal any sentence above 120 months would be preserved, but all other appellate rights (including the motion to suppress) would be waived. Dkt. 72 at 6.[1]

The trial was held on January 31, 2022. Dkt. 71. The Court reviews the transcript

---

[1]     Originally, the parties agreed that Defendant could appeal the suppression issues at the time Defendant entered the Stipulation for the bench trial. However, he subsequently reached an agreement with the Government whereby he would waive the right to appeal in return for the Government's agreement to recommend concurrent 10 year sentences. When that agreement was put on the record at the sentencing hearing, Defendant did not object. Crim. Dkt. 71 at 5-20.

**MEMORANDUM DECISION AND ORDER - 5**

to determine whether there was evidence that Defendant's physical health was so bad that he could not understand the content of the proceedings.

When the Court discussed the stipulation with Defendant and asked him if that was his understanding of why the trial was being held and what the trial would be about, Defendant answered, "Yes, your Honor."

Despite this colloquy, Defendant states in his current Affidavit that he "was not okay with the stipulations," and that he "kept wanting to speak up when [he] didn't agree with things, but Mark would pretty much step in whenever I started to." Civ. Dkt. 33-3 at 11. But the transcript shows, right at the beginning of the hearing, Defendant stated he understood why he was there that day and what they were going to do. The record does not reflect that Mr. Ackley consistently interrupted the colloquy with his own agenda or at all. The record does not show that Defendant was physically sick, confused, prevented from speaking by his attorney, or did not agree with the terms of the stipulation he had signed several days earlier when he did not have COVID-19 symptoms.

The Court asked Defendant whether he understood that he could be prosecuted for perjury, if he answered untruthfully. Crim. Dkt. 71 at 3. Defendant answered affirmatively. *Id*.

It is the Court's habit to inquire of a litigant whether he desires to proceed with a hearing or have it continued if the litigant appears physically ill, confused, or mentally incapacitated. The Court did not observe anything in Defendant's behavior that would have caused it to question Defendant's competence or ability to proceed. Defendant did not raise any issue as to his physical health or mental capacity.

**MEMORANDUM DECISION AND ORDER - 6**

The Court asked Defendant several questions about his competency to proceed. The Court asked whether he had taken any drugs that would affect his thought process. Defendant stated in his own words why he was there—he knew he was, in effect, pleading guilty via the stipulated trial process. *Id*. at 4-5. Mr. Ackley also stated he had no doubt as to his client's competence to waive his right to a jury trial and proceed to the stipulated bench trial. *Id*. at 5. This is followed by a lengthy colloquy in which the Court asked if Defendant was satisfied with his counsel, if he understood the sentencing guidelines, the fact that there is no parole, that he was giving up particular constitutional rights, and the forfeitures and civil rights deprivations associated with being a convicted felon. Defendant consistently answered in the affirmative. This colloquy occupies about ten pages of the transcript, and nowhere in that ten pages does Mr. Ackley "cut in and basically shut [him] up," as Defendant now asserts. *See* Crim. Dkt. 71 at 5-10; Civ. Dkt. 33-3 at 11.

Defendant also asserts that his "pause" in responding to the Court's question about property forfeiture during trial is evidence that he was so confused because of his COVID condition he could not understand the proceeding. The evidence is to the contrary. First, the medical and Chirp records do not show that Defendant was confused or unable to think on the date of the trial, but show he carried on reasoned communications with recipients of his Chirps. Second, this colloquy was about an ancillary topic—property forfeiture. It is implausible that Defendant's only pause in the proceeding was about property forfeiture and not the crime and punishment if he was adamantly opposed to the stipulation. Third, the Court gave Defendant three opportunities to clarify or change his

**MEMORANDUM DECISION AND ORDER - 7**

response, and he did not.

> THE COURT: Do you understand that, by submitting facts upon which the Court can find you guilty, you will also be forfeiting or agreeing to the forfeiture of certain property to the Government as identified in the indictment?
>
> (Pause.)
>
> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Do you understand that?
>
> THE DEFENDANT: Okay. Yes, Your Honor.
>
> THE COURT: Do you understand that?
>
> THE DEFENDANT: Yes, Your Honor.

Crim. Dkt. 71 at 12.

The Court agrees with the Government that this pause does not mean that Defendant was confused or disagreed to the extent that he did not want to continue with the stipulation. The Defendant's subsequent answers, confirmed by the Court twice, demonstrate he did understand the forfeiture provision and was not confused by his illness to the extent that he could not understand. No parts of the transcripts demonstrate confusion or lack of understanding.

The record also reflects that Defendant pointed to something in the written stipulation and did not say anything, but this, again, does not mean that Defendant was so confused he could not even articulate that he needed a continuance. Rather, the record reflects that he was simply pointing out something to his attorney. In fact, Mr. Ackley immediately raised the issue that Defendant pointed to. Mr. Ackley told the Court that they had a question as to whether the ammunition was short or long caliber, and the Court

**MEMORANDUM DECISION AND ORDER - 8**

clarified that would not make any difference. Crim. Dkt. 71 at 15.

The Court asked Defendant if that was the reason he hesitated for a moment, and Defendant answer, "Well—." *Id*. The Court said, "This is your chance. If there is anything else in the stipulated facts that you really are struggling with, I think now is the time to clarify them." *Id*. Defendant carried on regular conversations with Chirp recipients before and after the trial (discussed below). Those communications suggest that Defendant had the wherewithal to tell the judge exactly what his physical and mental status was. Instead of revealing to the Court that he was so physically ill he felt incompetent, Defendant replied, "We're good. I agree with this." *Id*.

The prosecutor then read the charges to Defendant in open court, and Defendant was asked whether he agreed with the facts that he stipulated to, in fact, would establish each of those elements of the three charges in the indictment." Defendant again replied, "Yes." *Id*. at 18.

In addition to the stipulated trial transcript, Defendant's sentencing allocution where he effusively praises Mr. Ackley also directly controverts Defendant's new attempt to show that Mr. Ackley forced him to sign the stipulation, knew he was too sick to proceed to trial, and "cut him off to shut him up" every time he tried to speak or ask questions in court. Months later at sentencing, where Defendant had a clear mind and was physically well, he did not raise these issues that allegedly occurred at the stipulated trial. Instead, Defendant stated:

> Your Honor, everything that Mark [Ackley] has done for me—I mean, I truly love this guy, and you guys got to know that, and I just want him to know that and everybody

**MEMORANDUM DECISION AND ORDER - 9**

> here to know that. I didn't—Mark and I have gone over these things, and, you know, this has been a long process. There's things that— and he is right. *There is things that—that I have in my heart and things that I believe, but we lose. Right. And I understand it. I know I'm guilty of this*.

Crim. Dkt. 72 at 24-25 (emphasis added).

Defendant cannot create a dispute of fact by contradicting himself. If Defendant's claims about his physical health made him incompetent to proceed at the stipulated trial, he would have said so. If Defendant's claims about Mr. Ackley were true, Defendant certainly would have said something different at the stipulated trial and in allocution. Nothing whatsoever in the transcripts supports Defendant's claims that he was so ill with COVID symptoms and his counsel knew he was incompetent as a result, but counsel tried to cover up that fact, proceed with the trial on his own agenda, and simply "get away from [Defendant], because he was sick." Civ. Dkt. 33-3 at 11.

Against this record, Defendant brings several items to show that he was so ill with COVID-19 that he did not understand what was going on at the hearing. Defendant tested negative for COVID on January 30, 2022, one day before the hearing, but was told it may have been a false negative. He tested positive the day after the hearing, on February 1, 2022. When tested on February, 1, 2022, his symptoms did not include confusion or lack of mental clarity. His symptoms were body aches, chills, "maybe a fever," a voice that was "a little hoarse, and 'something going on with his heart.'" Civ. Dkt. 33-1 at 2. The next day he reported symptoms of a "fluttering heart beat" and was concerned because he has a family history of cardiac disease. *Id*. at 13. The medical provider discussed this issue "at length" with Defendant. *Id*. Nothing shows Defendant did not have the ability

**MEMORANDUM DECISION AND ORDER - 10**

articulate his problem or understand the discussion a day after the trial.

Defendant submitted "Chirps" that he sent near the date of the trial. A sampling of messages he sent relevant to the issues at hand are include the following:

> 1/28/2022    Defendant says: "My guts feel terrible today. I keep having weird dreams. I have court Monday and am a little scared. Its just my guilty plea really. Tyler says to me that Everything will work out how its suppose to, which he got from me so I can't really argue with it."

> 1/29/2022    Defendant says, "Im getting sick though, maybe just a cold in my chest."

> 1/29/2022    Defendant says he hopes he receives a sentence of not more than 10 years; he explains about appeals and post-conviction actions; he asserts that there are a lot of loose ends in his case but that it has dragged on for a long time, that he wished his lawyer was "hungry as hell to win," like he was five years ago, and now that he's the boss, he's not as good, and explains why he was protecting himself against gang members by keeping a gun at his shop.

> 1/30/2022    "So this time your covid started as a bad sore throat? Mine is sore AF now."

> 1/30/2022    "I think I might have covid again. My throat started hurting a couple hours ago."

> 1/30/2022    "Now it hurts like a fucker. A lot of units have covid here. And my head is pounding…. It's weird cuz two hours ago nothing then all of a sudden My throat and head hurt feel bad."

> 1/30/2022    "I feel crappy but maybe its something else. That's what my throat feels like."

> 1/30/2022    "The test came back negative but they said if its early they will be wrong sometimes….Im starting to get sick now. Im sure by tomorrow I will be worse."

> 1/31/2022    Before the sentencing hearing, Defendant wrote, "Good morning. I feel fucking terrible this morning.

**MEMORANDUM DECISION AND ORDER - 11**

Its gonna be a rough fucking day at court. I love you have a good day. I feel like shit this morning. Its gonna be a rough day in court. Have a good day."

1/31/2022    After the sentencing hearing, Defendant explained the complicated stipulated guilty plea process to the message recipient and suggested that she Google "affirmative defenses, imperfect self defense and justification defenses" so that she could "understand kinda what we are going to argue [on appeal]."

1/31/2022    Later that night, Defendant complained of chills and that he was "so fucking sick." He carried on lengthy conversations with "Micki" and "Susan"; neither conversation showed he had any signs of being mentally incompetent.

Civ. Dkt. 33-2. Clearly, Defendant could have stated as much to the judge on January 30, 2022.

The record definitively demonstrates that Defendant was not so sick with COVID on the day of the trial that he was incoherent, incompetent, or was not acting knowingly intelligently, and voluntarily. He acted coherently in trial, and he clearly reasoned and communicated with Chirp recipients before and after trial. There is no doubt he suffered from a respiratory illness and a headache, but those symptoms did not affect his ability to understand and make decisions about the stipulated trial subject matter. Defendant asserts that, in general, COVID-19 patients suffer *can* suffer from "'Brain Fog,' disorientation, and mental confusion." Dkt. 37 at 3. The record shows Defendant did *not* suffer from these particular conditions at trial, but that he had physical symptoms only.

Further, it is not just Defendant's performance at the trial that matters, but whether he was so sick when he signed the written stipulation on January 25, 2022, that he was

**MEMORANDUM DECISION AND ORDER - 12**

legally incoherent. Civ. Dkt. 45.

The Court now reviews the evidence in the record showing Defendant's mental capacity and physical health during the time frame when he signed the written stipulation on January 25, 2022. In his Affidavit, Defendant states that he "was not feeling very well with stomach problems and stress at the time." Civ. Dkt. 33-3 at 10. Mr. Ackley, Ted Brown (Mr. Ackley's associate), and Defendant discussed the facts and the stipulation in a heated argument. *Id*. Defendant states, "Ultimately, [Mr. Ackley] convinced me to sign the paper because it was the only way we could appeal, and he would go talk to the prosecutor then get back to me the next day." *Id*. at 10. Nothing in the record at the time of the signing of the written stipulation shows that Defendant was too ill to comprehend the agreement—in fact, his description of the things that he and counsel argued over show that he understood what was happening. *See id*. Nor does anything show that Mr. Ackley coerced Defendant to sign the written stipulation.

In the many months between the stipulated trial on January 30, 2022, and sentencing on August 17, 2022 (long after Defendant recovered from COVID), he did not file a motion to set aside the bench trial conviction on the basis of his temporary incompetence because of the illness. He did nothing to bring this issue to the attention of the Court. Rather, he proceeded to the sentencing.

At sentencing, Defendant did not say anything about having been ill with COVID and consequently being incompetent at the bench trial. He did not raise any of the problems with his counsel that he raises in this case. Rather, as noted above, he highly praised Mr. Ackley's work and acknowledged that, even though in his heart he disagreed

**MEMORANDUM DECISION AND ORDER - 13**

with the silencer charge, he knew the stipulation was appropriate under the circumstances.

Finally, the Government raises the legal issue that Defendant cannot contest the voluntariness of his *stipulation* as if it were a guilty plea—either as a stand-alone § 2255 claim or as the basis for an ineffective assistance of counsel claim. The Government is correct that the constitutional protections mandated by Federal Criminal Procedure Rule 11, including a probe of whether a guilty plea is voluntary, do not apply in these circumstances. *See United States v. Schuster,* 734 F.2d 424, 425 (9th Cir. 1984) (per curiam) (holding that a plea of not guilty combined with a stipulation of facts sufficient to establish guilt does not constitute a de facto guilty plea and therefore does not implicate the procedural protections of such a plea), *cert. denied,* 469 U.S. 1189 (1985); *United States v. Miller,* 588 F.2d 1256, 1263–64 (9th Cir. 1978) (the requirements of Rule 11 are "applicable only to guilty pleas (or pleas of Nolo contendere ) and not to stipulations."), *cert. denied,* 440 U.S. 947 (1979). In fact, the parties' own written stipulation acknowledged: "A trial judge need not make as probing an inquiry as is required by Fed. R. Crim. P. 11 when considering whether a defendant's factual stipulation is knowing and voluntary." Crim. Dkt. 45 at 12. The Court agrees that Rule 11 does not apply, but regardless, the record contains ample evidence to show that voluntariness was adequately probed and the stipulation was voluntary.

This ineffective assistance claim is subject to denial based on insufficient evidence in the record to support either the deficient performance or prejudice prong.

**MEMORANDUM DECISION AND ORDER - 14**

C.  Discussion of Direct Appeal Claim

Defendant asserts he asked Mr. Ackley to file an appeal, but Mr. Ackley "wouldn't." Civ. Dkt. 1-1 at 7. Ineffective assistance of counsel claims for failure to file a notice of appeal are evaluated under the *Strickland* test, *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), but the prejudice prong is different. In a case "where a defendant specifically instructs counsel to file a notice of appeal, failure to do so constitutes ineffective assistance of counsel, and the lost chance to appeal constitutes prejudice. *United States v. Sandoval-Lopez*, 409 F.3d 1193, 1196-98 (9th Cir. 2005). This is so even if a defendant waives his right to appeal, *id*. at 1197, and even if filing an appeal could be a breach of the plea agreement. *Garza v. Idaho*, 586 U.S. 232, 241, 244 (2019).

After executing the original Stipulation (which preserved his right to appeal), Defendant entered into a second agreement, this time waiving his appeal rights in exchange for a 10-year recommendation at sentencing. The parties made the waiver clear on the record at the beginning of the sentencing hearing. Crim. Dkt. 72 at 5-7. Defendant specifically affirmed the appellate waiver during his allocution, stating that the purpose of waiving his appeal was to have as much time with his elderly father as he could under the stipulation for a 10-year sentence. Crim. Dkt. 72 at 27.

In support of Mr. Ackley's position that he did not file a notice of appeal because Defendant did not specifically instruct him to do so after they had a discussion, Mr. Ackley declares he knew he had an ethical obligation and his office had a practice to file a notice of appeal—regardless of whether the client waived that right in an agreement with the Government—if the client insisted on filing an appeal despite Mr. Ackley's

**MEMORANDUM DECISION AND ORDER - 15**

advice not to appeal. Civ. Dkt. 14-1 at 10.

Sentencing in this case occurred on August 17, 2022, which means the deadline for filing a notice of appeal was 14 days later, on August 31, 2022. It is undisputed that, on August 29, 2022, two days before the appeal deadline, Defendant left a voicemail message directing Mr. Ackley to file a notice of appeal. Civ. Dkt. 14-1 at 9.

Mr. Ackley listened to the message on August 30, 2022. Recognizing his obligation to file a timely notice of appeal even though he believed filing a notice of appeal "would be a disaster" (Civ. Dkt. 30-2 at 11), via e-mail he directed his staff to draft the notice of appeal and take steps to schedule a visit with Defendant. Also on that date, Mr. Ackley instructed staff to file the notice of appeal as a precautionary filing. Civ. Dkt. 14-1 at 10.

Knowing that the filing of a notice of appeal would be a breach of the Stipulation and to protect Defendant, Mr. Ackley also took the extraordinary step of writing an email to the prosecutor, stating that he would file a notice of appeal unless he heard otherwise from Defendant, but that Mr. Ackley may still withdraw the notice after speaking with Defendant about the cons of appealing. Civ. Dkt. 30-2 at 9.

On August 31, 2022, the deadline, Mr. Ackley and Defendant conferred by telephone. Mr. Ackley advised Defendant not to file a notice of appeal, "considering the sentencing agreement, the appellate waiver, the potential consequences of the breach, and the chances of success on appeal." Dkt 14-1 at 10. Mr. Ackley declares that his "contemporaneous notes and subsequent email to staff" confirm that Defendant agreed to follow his advice. *Id.*; Civ. Dkt. 30-1 at 2.

**MEMORANDUM DECISION AND ORDER - 16**

The parties were ordered provide supplementation of the facts. Mr. Ackley clarified that: "By the end of my conversation with Mr. Thomas, I have zero doubt that he agreed not to pursue an appeal. Bottom line: I provided him my advice, but this was his decision." This is corroborated by an email Mr. Ackley sent to his staff on August 31, 2022, at 1:47 p.m., stating, "I spoke to Scott by phone and he agreed not to file a notice of appeal. **So no notice of appeal**." (emphasis in original)." Civ. Dkt. 30-1 at 3.

Mr. Ackley also recalls that Defendant's decision not to file an appeal was in part due to Mr. Ackley's promise to try to help him in another way, such as trying to help him received credit for time served. That is documented in an email to staff. Dkts 30-1 at 3; 30-2 at 10. Defendant's Affidavit corroborates that the credit for time served issue was the only reason he would have appealed. Civ. Dkt. 33-3 at 12-13. Defendant states that, because the presentence investigation report was incorrect regarding whether he was on state parole at the time of his federal arrest, his reasoning was that if he did not appeal, his sentence would be over 144 months, not 120 months, if he did not get credit for his jail time. Dkt. 33 at 7. Mr. Ackley's recollection is supported by the supplemental emails. In addition, his recollection is supported by his personal and office policy that, "[i]f Mr. Thomas had insisted that he wanted an appeal despite my advice, then consistent with his right, my office's practice, and my ethical obligations, I would have filed a notice of appeal on a theory that the waiver was somehow invalid, as my office has done on rare occasions." Dkt. 14-1 at 10.

Defendant's supplemental clarification does not state that he is certain he told Mr. Ackley to appeal. Rather, Defendant states that he is certain he told Mr. Ackley to try to

**MEMORANDUM DECISION AND ORDER - 17**

fix the parole credit for time served issue another way. Defendant states that, during a last phone call with Mr. Ackley, "I'm sure I told him to try to fix it another way, but I'm also sure that I expected the Notice of Appeal to state in place until it was fixed. When I hung up with him, that was what I thought was happening, from what I remember." Defendant's statements that "I expected" and "what I thought was happening, from what I remember" does not show that he instructed Mr. Ackley to file or pursue the notice of appeal. Further, Defendant did not follow up his conversation with Mr. Ackley with a letter inquiring about the status of the appeal, a bar complaint, a letter to the court, a motion requesting permission to file a late appeal, or anything whatsoever that supports his vague contention that he "expected" an appeal.

Defendant has not clearly declared under oath he told Mr. Ackley not to appeal. He clearly declared he told Mr. Ackley to find another way. That "other way" existed and has been realized in this action. Mr. Ackley correctly advised Defendant that there was another way—rather than breaching his plea agreement and jeopardizing his 120-month concurrent sentence—to fix the parole credit for time served issue. Mr. Ackley did not perform deficiently, but extraordinarily under the circumstances, by notifying staff and even the prosecutor of the possible impending appeal that might constitute a breach of the parties' Stipulation. Because Defendant's current contention is contrary to the entire record, no further evidentiary development is necessary, and this claim will be denied.

**MEMORANDUM DECISION AND ORDER - 18**

## ORDER

**IT IS ORDERED:**

1. Defendant's § 2255 Motion (Civ. Dkt. 1; Crim Dkt. 69) is DENIED.

2. Defendant's Motion for Status Report (Civ. Dkt. 38) is GRANTED to the extent this Order has been issued; it is DENIED in all other aspects, including the request for an evidentiary hearing.

3. The Court does not find its resolution of this habeas matter to be reasonably debatable, and a certificate of appealability will not issue.

DATED: June 18, 2026

B. Lynn Winmill
U.S. District Court Judge

MEMORANDUM DECISION AND ORDER - 19